# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| Tremell Washington,<br><br>           Plaintiff,<br><br>v.<br><br>Palmetto State Armory LLC,<br><br>           Defendant. | C/A No. 3:24-cv-02651-MGL-SVH<br><br>**AMENDED COMPLAINT** |

## EMPLOYMENT CASE

Plaintiff, complaining of the Defendant, respectfully alleges the following:

## PARTIES & JURISDICTION

1. Plaintiff, Tremell Washington, is a citizen and resident of Orangeburg County, South Carolina.

2. Defendant, Palmetto State Armory ("Defendant"), is a privately owned arms retailer in South Carolina.

3. The Parties have sufficient connections to Lexington County, South Carolina, because this is where Defendant employed Plaintiff and where the events at issue occurred. Thus, jurisdiction and venue are proper.

4. Plaintiff's claims arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e et seq. ("Title VII") and South Carolina law.

5. Plaintiff exhausted his administrative remedies by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission. Plaintiff received his Notice of Right to Sue, and this action is timely.

6. This Court can exercise subject matter jurisdiction over these claims.

## FACTUAL ALLEGATIONS

7. Plaintiff is a black male.

8. Plaintiff was employed by Defendant as an AK Armorer from November 15, 2021 until September 6, 2022.

9. At all times, the Plaintiff performed the functions of his job in a competent, if not more than competent, manner.

10. During Plaintiff's employment, Defendants employees, including supervisors, used the "n-word" around Plaintiff.

11. Plaintiff complained to Defendant's management regarding the use of racial epithets.

12. On August 30, 2022, Plaintiff came to work to discover that a white coworker had tied an air-hose into a noose at Plaintiff's workstation.

13. Plaintiff brought the noose to the attention of Cameron Tapler, Defendant's Plant Manager, a white male.

14. Tapler laughed at Plaintiff's complaint.

15. Tapler moved the noose to another location.

16. On September 1, 2022, Plaintiff was forced to leave work early due to a severe migraine.

17. Plaintiff informed a supervisor, Will Peavyhouse, a white male, that he needed to leave early.

18. After notifying his supervisor, Plaintiff left from work.

19. Nevertheless, Peavyhouse proceeded to inform Plaintiff's co-workers that Plaintiff had abandoned the job for the day without informing Peavyhouse or other management.

20. Plaintiff also discovered on September 1, 2022, that his co-workers posted racist material on their Facebook pages.

21. The next day, September 2, 2022, Plaintiff arrived to work only to discover that there was no electrical power at his workstation.

22. Plaintiff's white co-worker, Danny Davis, remarked that Plaintiff needed to put on a "I can't breathe" shirt and put his hands into the air.

23. Davis's remark was a crude and racist reference to George Floyd and Michael Brown, two black men who were murdered by white police officers.

24. Plaintiff called Defendant's human resources office to inform them of Davis's racist comments as well as the noose that was hung in his workstation.

25. Later that day, Plaintiff returned from a lunch break to discover that the noose had been re-hung at neck height in Plaintiff's workstation.

26. Plaintiff complained to Andrew Outlaw, Defendant's Team Leader, about the re-hung noose.

27. Plaintiff stated that he was struggling to not become offended at the racist behaviors.

28. Outlaw ignored Plaintiff's complaints and simply walked away.

29. Plaintiff then called Peavyhouse, who told Plaintiff that if Plaintiff wanted anything done about the noose, Plaintiff would have to remove the noose himself.

30. Plaintiff then went to talk to Tapler about the re-hung noose.

31. Tapler remarked that it was not a big deal, as his previous white co-workers told his black peers that they "better not mess up" because the white co-workers had a rope.

32. Tapler's comment conveyed that black co-workers were threatened with hanging should they make mistakes at work.

33. That afternoon, Plaintiff was brought to Defendant's human resources office by Peavyhouse.

34. Peavyhouse and Defendant's human resources official gave Plaintiff a "final" disciplinary action for leaving work with a migraine the day prior.

35. Plaintiff truthfully stated that he had informed his supervisor of his need to leave early due to the migraine.

36. Plaintiff additionally re-raised his concerns to Peavyhouse and Defendant's human resources official regarding the racist behavior in the workplace, Defendants failure to appropriately respond to such behavior, and what appeared to be escalating retaliation in response to Plaintiff's complaints of racist behavior.

37. Four days later, on September 6, 2022, Peavyhouse began to intensely criticize and scrutinize Plaintiff's actions at work.

38. Peavyhouse criticized Plaintiff for taking too long to use the bathroom.

39. Peavyhouse stood over Plaintiff and demanded that Plaintiff work harder and faster.

40. Plaintiff stated to Peavyhouse that Plaintiff could tell that Peavyhouse was trying to provoke Plaintiff in effort to make Plaintiff quit.

41. Peavyhouse then terminated Plaintiff's employment.

42. Peavyhouse terminated Plaintiff in front of eight of Plaintiff's unprivileged co-workers.

43. Peavyhouse falsely alleged that Plaintiff was insubordinate and/or unfit for his profession.

**FOR A FIRST CAUSE OF ACTION**
**(Violations of Title VII - Race Discrimination)**

44. Plaintiff realleges the foregoing where consistent.

45. Plaintiff is a member of a protected class based on his race.

46. Plaintiff met the legitimate performance expectations of his job.

47. Plaintiff was held to a stricter standard than his white peers.

48. Plaintiff was subjected to harassment, disparate treatment, and a racially hostile work environment as a result of the discriminatory and harassing behavior that his supervisors and co-workers engaged in and permitted because of his race.

49. Defendant's management failed or refused to appropriately respond to identified instances of racial discrimination in the workplace.

50. Plaintiff suffered harassment, disparate terms and conditions of employment, and termination. These adverse employment actions were motivated by his race in violation of Title VII.

51. The above actions amount to unlawful race discrimination prohibited by Title VII of the Civil Rights Act of 1964, The Civil Rights Act of 1991 and amendments thereto and is the proximate cause of the Plaintiff's loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering for which the Plaintiff is entitled to the awards of actual damages as well as reasonable attorney's fees and costs of this proceeding. Plaintiff is further entitled to an award of punitive damages for the intentional, wanton, reckless, and/or malicious behavior of Defendant.

## FOR A SECOND CAUSE OF ACTION
### (Violations of Title VII - Retaliation)

52.     Plaintiff realleges the foregoing where consistent.

53.     Plaintiff engaged in protected activities when he contacted Defendant's management and human resources department to complain of race-based discrimination, including disparate treatment, harassment, retaliation, and hostile work environment.

54.     Defendant and its relevant decisionmakers were on notice of Plaintiff's protected activities when it took adverse employment action against Plaintiff.

55.     Plaintiff suffered harassment, hostile work environment, disparate terms and conditions of employment, and termination.  These adverse employment actions were because of Plaintiff's protected activities under Title VII.

56.     The above amounts to unlawful retaliation prohibited by Title VII of the Civil Rights Act of 1964, The Civil Rights Act of 1991 and amendments thereto and is the proximate cause of the Plaintiff's loss of earnings, loss of prospective earnings and benefits, embarrassment, humiliation and mental anguish, personal injury, and mental suffering for which the Plaintiff is entitled to the awards of actual damages as well as reasonable attorney's fees and costs of this proceeding.  Plaintiff is further entitled to an award of punitive damages for the intentional, wanton, reckless, and/or malicious behavior of Defendant.

## FOR A THIRD CAUSE OF ACTION
### (Defamation)

57.     Plaintiff realleges the foregoing where consistent.

58.     Plaintiff is not a public figure.

59.     Defendant defamed Plaintiff by asserting to Plaintiff's peers and subordinates that Plaintiff was justifiably terminated, that Plaintiff had not properly executed the duties of his job,

that Plaintiff engaged in unprofessional or insubordinate behavior, and/or that Plaintiff left his job without informing management.

60. Defendant published its defamatory assertions to Plaintiff's unprivileged peer and subordinate co-workers.

61. The recipients of Defendant's defamatory statements were not within a need-to-know basis.

62. Defendant's accusations were false, known to be false, and made with malice.

63. Defendant's accusations impugned Plaintiff's professional aptitude and are thus defamatory *per se*.

64. Defendant's accusations amount to unlawful defamation for which Defendant is liable.

65. As a direct and proximate result of the defamatory conduct, Plaintiff has suffered reputational loss, been embarrassed, humiliated, and has sustained mental anguish. Plaintiff is entitled to an award of actual damages against Defendant, including damages for emotional pain and suffering, in amounts to be determined by a jury. Plaintiff is further entitled to an award of reasonable attorney's fees and costs for this action.

### FOR A FOURTH CAUSE OF ACTION
### (Race Discrimination in Violation of Section 1981)

66. Plaintiff realleges the foregoing where consistent.

67. By the actions described herein above, Defendant denied Plaintiff, an African American, the same right to make and enforce contracts as is enjoyed by white citizens of the United States.

68. Such treatment constitutes unlawful discrimination in violation of Plaintiff's rights and privileges as guaranteed by the Thirteenth Amendment to the United States Constitution and

as protected by 42 U.S.C. § 1981.

69. Defendant's violations of Section 1981 were willful or intentional, and were committed with malice and/or a reckless indifference to Plaintiff's federally protected rights.

70. As a direct and proximate result of the racial discrimination alleged herein, Plaintiff was terminated and otherwise suffered disparate treatment. Plaintiff is entitled to all damages caused thereby including back pay, front pay, loss of earning capacity, lost benefits, as well as emotional distress, loss of reputation, humiliation, embarrassment, and mental anguish.

71. Plaintiff is entitled to punitive damages for the same.

72. Plaintiff is further entitled to an award of attorneys' fees and costs for this action.

73. Defendant is liable to Plaintiff for all damages arising from Defendant's violation of Section 1981, in amounts to be determined at trial.

## FOR A FIFTH CAUSE OF ACTION
**(Retaliation in Violation of Section 1981)**

74. Plaintiff realleges the foregoing where consistent.

75. Plaintiff engaged in protected activities, including but not limited to making complaints of racial discrimination, a racially hostile work environment, racially motivated harassment, racially disparate terms and conditions of employment, retaliation, and opposing activities constituting the same.

76. Defendant took adverse actions against Plaintiff with the purpose of retaliating against him because of his participation in the protected activities, including, but not limited to, subjecting Plaintiff to harassment, hostile work environment, disparate terms and conditions of employment, and termination.

77. Such treatment constitutes unlawful retaliation in violation of Plaintiff's rights and privileges as guaranteed by the Thirteenth Amendment to the United States Constitution and as

9

protected by 42 U.S.C. § 1981.

78. Defendant's violations of Section 1981 were willful or intentional, and were committed with malice and/or a reckless indifference to Plaintiff's federally protected rights.

79. As a direct and proximate result of the retaliation alleged herein, Plaintiff was terminated and otherwise suffered disparate treatment. Plaintiff is entitled to all damages caused thereby including back pay, front pay, loss of earning capacity, lost benefits, as well as emotional distress, loss of reputation, humiliation, embarrassment, and mental anguish.

80. Plaintiff is entitled to punitive damages for the same.

81. Plaintiff is further entitled to an award of attorneys' fees and costs for this action.

82. Defendant is liable to Plaintiff for all damages arising from Defendant's violation of Section 1981, in amounts to be determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against the Defendant for an award of actual and compensatory damages in amounts to be determined by a jury as well as reasonable attorney's fees, costs of this action, punitive damages, nominal damages, an award of pre-judgement interest, a lump sum tax-offset award, specific performance of reinstatement and a written apology, and any such other relief as this Court deems just and proper.

**(Signature Block to Follow)**

Respectfully submitted,

**CROMER BABB & PORTER, LLC**

BY: s/ *Chance Sturup*
    J. Paul Porter (Fed.# 11504)
    Chance Sturup (Fed.# 13815)
    Post Office Box 11675
    Columbia, South Carolina 29211
    Phone: 803-799-9530
    Fax:  803-799-9533
    chance@cromerbabb.com
    paul@cromerbabb.com
    *Attorneys for Plaintiff*

July 2, 2024
Columbia, South Carolina

11